Filed 3/26/24  In re L.G. CA4/2

*See dissenting opinion.*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re L.G., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082177 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000046) |
| v. | OPINION |
| D.A. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant D.A.

1

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant O.G.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Samara Silverman, Deputy County Counsel for Plaintiff and Respondent.

The juvenile court terminated the parental rights of defendants and appellants D.A. (Mother) and O.G. (Father; collectively, Parents) to their daughter, L.G. (Welf. & Inst. Code, § 366.26, subd. (b)(1).)[1] Parents contend a sufficient inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) was not conducted. Specifically, Parents assert that during the initial inquiry phase (§ 224.2, subs. (a)-(c)) plaintiff and respondent Riverside County Department of Public Social Services (the Department) did not inquire of L.G.'s extended paternal relatives regarding possible Native American ancestry. We affirm.

## FACTS

L.G. was born in January 2020 and placed in a neonatal intensive care unit (NICU). Approximately one week after L.G. was born, the Department obtained and executed a protective custody warrant for L.G., who remained in the NICU. On January 23, 2020, the juvenile court ordered L.G. detained.

Parents resided with L.G.'s paternal grandparents and uncle. The Department called L.G.'s paternal grandparents, but they did not answer so a voicemail was left.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

The Department spoke with L.G.'s paternal aunt and she agreed to notify L.G.'s paternal grandparents about the case.

Parents denied any knowledge of having Native American ancestry. L.G.'s maternal grandmother claimed Native American ancestry through the Yaqui Tribe. In February 2020, the Department notified the Bureau of Indian Affairs and the Pascua Yaqui Tribe, in Arizona, of the proceedings regarding L.G. The notice included identifying information regarding L.G.'s maternal relatives, but very little identifying information regarding L.G.'s paternal relatives. The Pascua Yaqui Tribe concluded that, based on the information provided, L.G. is not eligible for membership in the Tribe. At the jurisdiction and disposition hearing in February 2020, the juvenile court found ICWA inapplicable in the case.

In July 2021, the juvenile court returned L.G. to Parents' custody on a plan of family maintenance. In December 2021, the Department obtained and executed a protective custody warrant to remove L.G. from Mother, leaving L.G. in Father's custody on a plan of family maintenance. In October 2022, the Department obtained and executed a protective custody warrant to remove L.G. from Father, who was still residing with L.G.'s paternal grandparents.

In October 2022, Father again denied any knowledge of having Native American ancestry. In October and December 2022, the Department spoke with L.G.'s paternal aunt regarding placement. In November 2022, Father and L.G.'s paternal grandmother, aunt, and cousin attended a visit with L.G. in a park. L.G.'s paternal grandmother attended a hearing in the case in December 2022. She was not questioned about

3

possible Native American ancestry. The juvenile court said, "The Court is not making an ICWA finding at this time. We'll do an inquiry at dispo." The disposition hearing took place in January 2023; L.G.'s extended paternal relatives were not present at the hearing; and the court did not make an ICWA finding.

In April 2023, the Department again inquired of Father as to whether he had knowledge of having any Native American ancestry; Father denied knowing of any Native American ancestry on his side of the family. In September 2023, the juvenile court terminated Parents' parental rights to L.G.

## DISCUSSION

Parents contend that, during the initial inquiry phase into L.G.'s possible Native American ancestry, the Department erred by not questioning L.G.'s extended paternal relatives. The Department concedes it did not question L.G.'s extended paternal relatives regarding possible Native American ancestry.

When a child is taken into protective custody pursuant to a warrant (§ 340), the Department is typically not obligated to question extended family members about possible Native American ancestry during the initial inquiry phase, "although case-specific circumstances may require [a] department to interview extended family members." (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500, 503-504, review granted July 26, 2023, S279743 [lead case is *In re Ja.O.*, review granted July 26, 2023, S280572]; see also *In re Andres R.* (2023) 94 Cal.App.5th 828, 847, review granted Nov. 15, 2023, S282054.)

4

Parents concede that on the occasions that L.G. was taken into protective custody the Department utilized warrants. Because warrants were used, per subdivision (b) of section 224.2, the Department was not required to question L.G.'s extended relatives about their possible Native American ancestry. (*In re Robert F.*, *supra*, 90 Cal.App.5th at pp. 500, 503-504.) Correspondingly, the juvenile court did not err by terminating Parents' parental rights despite the Department not inquiring of L.G.'s extended paternal relatives regarding possible Native American ancestry.

Parents assert that because this issue is pending before the Supreme Court, we should "err on the side of advancing the purpose of the ICWA . . . and apply a broad interpretation of section 224.2, subdivision (b), to apply to the protective custody warrant at issue in this case." We believe *Robert F.* sets forth the proper interpretation of the law. Therefore, we apply *Robert F.* in this case.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

I concur:

MENETREZ
J.

5

[*In re L.G.*, E082177]

RAPHAEL, J., dissenting.

The Riverside County Department of Public Social Services (Department) did not inquire of any paternal extended family members about whether they have information that the child L.G. had Native American ancestry. The majority opinion holds that they had no duty to do so because the Department used a warrant to remove L.G.

The method by which L.G. was removed from her home bears no connection to the initial inquiry into whether she is an Indian child per the Indian Child Welfare Act. Unlike the majority, I agree with the opinions from five divisions holding that the initial inquiry duty is the same whether or not a warrant is used to remove a child. (See *In re Delila D.* (2023) 93 Cal.App.5th 953; *In re Samantha F*. (2024) 99 Cal.App.5th 1062; *In re C.L.* (2023) 96 Cal.App.5th 377; *In re Jerry R.* (2023) 95 Cal.App.5th 388; *In re V.C.* (2023) 95 Cal.App.5th 251; *In re L.B.* (2023) 98 Cal.App.5th 512.)

This initial inquiry duty comes, first, from the text of the statute. Welfare & Institutions Code section 224.2, subdivision (b), imposes a required inquiry duty when a Department receives temporary custody of a child through section 306. Section 306, subdivision (a) authorizes the Department to receive temporary custody of children delivered by peace officers, as happened here under section 340, subdivision (c) and the removal warrants.[1] When L.G. was removed from her parents and placed in the

_____

[1] Statutory citations herein are to the Welfare and Institutions Code.

1

Department's custody, the Department had a duty to inquire of her extended family established by section 224.2.

Secondly, our rules of court and administrative regulations recognize that the reason for the Section 224.2 initial inquiry duties is that children are being removed from their parents' home and placed elsewhere.  (See Cal. Rules of Court, rule 5.481(a)(1); Department of Social Services Regulations 31-001.21 [the "requirements for inquiry into whether a child is an Indian child . . . apply to all children placed in out-of-home care"). ICWA promotes keeping Indian children in Indian homes (18 U.S.C. § 1902), a purpose that is at issue to the same degree regardless of whether a warrant is used for removal. The majority opinion requires rejecting the rules and regulations, which are sensible interpretations of the statutory law enacted after public comment.

As several paternal relatives were readily available and none were asked whether the child had Native American heritage, I would not find the lack of compliance harmless.  (See *In re Benjamin M*. (2021) 70 Cal.App.5th 735, 744.)

I respectfully dissent because I would conditionally affirm the order terminating parental rights and order the Department to complete the initial inquiry.

RAPHAEL             <br>J.